1986

Jean H. HARRINGTON and Fred L. Love, Respondents v. Devoe BLACKSTON, Appellant.

(429 S.E. (2d) 826)

Court of Appeals

*Larry C. Brandt* of *Brandt, Fedder, Graham & Cain,* Walhalla, and *Michael J. Smith,* Seneca *for appellant.*

*Jean H. Harrington* and *Fred L. Love, pro se.*

Submitted Jan. 18, 1993.

Decided April 5, 1993.

CURETON, Judge:

Respondents, Jean H. Harrington and Fred L. Love, owners of condominiums (owners) in the Leeward Landing Horizontal Property Regime (regime), commenced this declaratory judgment action against appellant, Devoe Blackston, the purchaser of the Leeward Landing development at a judicial sale, to determine the rights and obligations of the parties. At

a nonjury trial, the court held that part of the development had been submitted to the regime. It also held that although Blackston had a right, he was not required to develop the remainder of the regime property. All parties served notice of appeal. Only Blackston perfected his appeal. We affirm in part, reverse in part, and remand.

In 1984, Donald P. Taylor purchased 64.94 acres of land in Anderson County, which he conveyed to his wholly owned corporation "Taylored Developers, Inc." (Taylored) with the intent of developing the property as a condominium project. In order to finance the development of the project, Taylored, in July 1985, obtained a construction loan from Roosevelt Federal Savings and Loan Association (Roosevelt Federal) and executed a mortgage and security agreement on the entire 64.94 acres.

The regime, which purports to contain 43.75 acres, was carved out of the 64.94-acre tract by a master deed dated May 1, 1986. This document sets forth the common facilities and the percentage of ownership in the common elements, and incorporates a plot plan for phase I of the regime containing 64 residences. In addition, the deed contemplates that the regime would contain six phases but reserved the right to develop phases II through VI "in any sequence as marketing demands, and to charge the units in any way that either keeps the same or less density to the project."

After the recording of the master deed, phase I was substantially completed and units were sold to third parties. However, the project began to experience financial difficulties and Roosevelt Federal was forced to bring a foreclosure action on August 31, 1987.

By order dated June 2, 1988, the master foreclosed Roosevelt Federal's mortgage and ordered the property sold at public sale. The order of sale states that the sale was subject to property taxes and the provisions of the master deed as to the property submitted to the regime. In conformity with this order, that property was advertised and sold subject to the provisions of the master deed.

Blackston purchased the property at the foreclosure sale. The deed from the master to Blackston, dated April 4, 1989, conveyed the entire 64.94 acres but excepted certain condominiums which had already been sold to third parties. It de-

scribed the property that had been submitted to the regime as 43.75 acres as described on a plat.

After recordation of his deed, Blackston and certain condominium owners disagreed as to Blackston's obligation to continue development of the regime. Some condominium owners also maintained Blackston was responsible for defects in buildings constructed by Taylored. Blackston's position was that he was not a substitute for the developer and therefore was neither responsible for construction defects nor required to develop the regime further; moreover, he asserted the only property restricted by the master deed and submitted to the regime was the 12.82 acres in phase I.

The owners brought this action to determine Blackston's obligation to the regime property. At the hearing, the parties stipulated that Blackston was not responsible for defects in buildings constructed and units sold before he purchased the development.

The trial court held that 1) Blackston had purchased 43.75 acres subject to the terms of the master deed, 2) Blackston had a right but was not required to develop the remaining property, and 3) the issue of interpretation of the master deed was not before the court because it had not been raised by the pleadings.

Upon the parties' motions to clarify its order, the trial court issued a supplemental order holding that Blackston purchased the 43.75 acres, which the court referred to as phase I, subject to the terms of the master deed.

Blackston challenges the trial court's findings that the parties did not request interpretation of the master deed, that the master deed and plot plan designated the entire 43.75 acres as phase I, and that the master deed subjected property other than the 12.82 acres to its terms, and the court's refusal to reform his deed. We agree with Blackston that interpretation of the master deed was requested and that only 12.82 of the 43.75-acre tract was designated in the plot plan as phase I. We sustain the trial court's ruling that the entire 43.75-acre tract is ostensibly restricted by the master deed. We remand to the trial court for determination of whether Blackston's deed should be reformed and whether he has an obligation to develop that portion of the 43.75-acre tract not encompassed in the phase I plot plan.

## I.

In its order, the trial court stated that the issue of interpretation of the master deed was not before the court as it had not been raised in the pleadings. We disagree.

Rule 8(f) of the South Carolina Rules of Civil Procedure states that "[a]ll pleadings shall be so construed as to do substantial justice to all parties." Moreover, our Supreme Court has held that declaratory judgment actions must be liberally lly construed to settle legal rights and remove insecurity from legal relationships without awaiting a violation of the relationships. *Power v. McNair*, 255 S.C. 150, 154, 177 S.E. (2d) 551, 553 (1970): *Park v. Safeco Insurance Co. of America*, 251 S.C. 410, 414, 162 S.E. (2d) 709, 711 (1968).

The owners' complaint asked the court to declare the rights and obligations of the parties pursuant to the master deed and to determine whether Blackston had a duty to continue development of the regime. Similarly, the answer of Blackston asked for a declaration as to the parties rights and obligations concerning "the subject property and the subsequent development thereof." The recorded also reflects that Blackston's attorney requested an interpretation of the master deed.[1] We believe the pleadings and the statements made by the parties to the court in outlining their positions adequately placed the interpretation of the master deed before the court. The court erred by refusing to interpret the master deed. In order to facilitate their determination on remand, we will discuss the remaining issues.

## II.

Blackston next contends that the trial court erred by finding that the entire 43.75 acres had been designated as phase I. The master deed states that 43.75 acres were submitted to the regime. It incorporates by reference a plot plan for phase I. the only acreage shown on the plot plan as being in phase I is approximately 12.82 acres. There is no evidence that the entire 43.75 acres was designated as phase I.

---

[1] Blackston's attorney stated to the court at the commencement of the trial: "We're not denying that the master deed was on record. The question is interpretation of the master deed and what does the master deed actually do to the property."

Consequently, we find that phase I of the regime does not consist of 43.75 acres, but rather the 12.82 acres shown on the plot plan recorded with the master deed.

## III.

Blackston asserts that none of the property he purchased at the foreclosure sale is restricted by the master deed. Moreover, he contends the most liberal interpretation of the master deed supports the conclusion that only the 12.82 acres in phase I is restricted by the master deed.

The master's order granting foreclosure of the construction lender's mortgage states:

> Upon sale of the mortgaged premises . . . the purchaser will receive: (a) title to the units covered by the mortgage, together with the undivided interest of those units in the common elements, (b) the remaining undeveloped property within the regime, together with the right, subject to the provisions of the Master Deed, to construct units and/or amenities thereon and (c) the remaining acreage which is not a part of the regime.

The master ordered the property sold subject to "the provisions of the Master Deed as to the property submitted to the condominium regime," and that the purchaser at the foreclosure sale should take title subject only to past-due taxes and "the provisions of the Master Deed as to the condominium property." The notice of sale states "a portion of the property was submitted to a horizontal property regime pursuant to the provisions of a certain Master Deed. . . ." It then described the property submitted to the regime as containing 43.75 acres. Finally, Blackston's deed states a portion of the property he purchased was submitted to a horizontal property regime pursuant to the master deed. The property submitted to the regime is described in his deed as containing 43.75 acres.

Generally, a purchaser at a judicial sale who receives a deed embodying covenants and restrictions takes his title subject to such covenants and restrictions. *See* 26 C.J.S *Deeds* § 167(5) (1956); 47 Am. Jur. (2d) *Judicial Sales* § 268 (1969); 20 Am. Jur. (2d) *Covenants, Conditions, and Restrictions* § 22 (1965). Except to the extent controlled by statute, the terms of a judicial sale are within the discretion of

the court ordering the sale. 50 C.J.S. *Judicial Sales* § 13 (1947). One buying property at a judicial sale obtains only such interest as was within the jurisdiction of the court to sell. *Ex parte Keller*, 189 S.C. 26, 38, 199 S.E. 909, 915 (1938); *First Carolinas Joint Stock Land Bank of Columbia v. McNiel*, 177 S.C. 332, 343, 181 S.E. 21, 26 (1935); 47 Am. Jur. (2d) *Judicial Sales* § 233 (1969). In other words, a purchaser at a judicial sale secures the same title and rights in the property as the person whose interest was sold, or of the persons bound by the decree of sale. 50 C.J.S. *Judicial Sales* § 39(a) (1947).

The construction lender did not contend that the property should be sold at the judicial sale unrestricted by the master deed. In fact, the lender's complaint states: "The lien of the Plaintiff's [Roosevelt Federal's] mortgage is subject to the rights and interests created by the aforesaid Master Deed." In purchasing the property, Blackston became a party to the proceedings and bound by the order of foreclosure. *Ex parte Qualls*, 71 S.C. 87, 92, 50 S.E. 646, 647 (1905). He may not now argue he purchased the 43.75 acres free of the master deed's purported restrictions.

Blackston also argues the entire 43.75-acre tract is not burdened with the master deed's restrictions because the developer did not comply with the Horizontal Property Act, or S.C. Code Ann. § 27-31-10 to-300 (1976) as amended, in recording the master deed and associated documents. Specifically, he claims the master deed and associated documents do not contain the information required to establish a regime as to the entire 43.75 acres, except as to the 12.82 acres contained in the plot plan filed with the master deed and designated as phase I.[2]

As noted above, the trial judge made no determination as to the validity of the master deed or the manner in which it restricted the entire 43.75 acres. We remand these issues to the trial court for determination.

Accordingly, we remand this case to the trial court to determine the manner in which the master deed and associated documents restrict that portion of the 43.75 acres tract not en-

---

[2] S.C. Code Ann. § 27-31-100 prescribes the contents of the master deed; § 27-31-110 prescribes the contents of the plot and building plan and requires it be filed with the master deed.

compassed in the 12.82 acres contained in phase I. Additionally, the trial court shall consider whether Blackston is entitled to a reformation of his deed.

Affirmed in part, reversed in part, and remanded.

GOOLSBY, J., and LITTLEJOHN, Acting J., concur.