THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 
 Donald R.
 Groce, Appellant,
 
 
 
 
 

v.

 
 
 
 Horry County a
 Political, Subdivision of South Carolina, Horry County Treasurer, a political
 Subdivision of South Carolina, Crystal Montgomery in the official capacity as
 delinquent tax manager, South Carolina Department of Motor Vehicles, Wiley B.
 Turner, and Scott Hollingsworth, Defendants and Wiley B. Turner, Third Party
 Plaintiff v. Scott Hollingsworth, d/b/a Hollingsworth Rentals, LLC, Third
 Party Defendants
 
 
 Of Whom Horry
 County a Political Subdivison of South Carolina, South Carolina Department of
 Motor Vehicles, Wiley B. Turner and  Scott Hollingsworth, d/b/a Hollingsworth
 Rentals, LLC are the Respondents.
 
 
 
 

Appeal From Horry County
 Benjamin H. Culbertson, Circuit Court
Judge

Unpublished Opinion No.  2011-UP-125  
 Submitted December 1, 2010  Filed March
24, 2011

AFFIRMED

 
 
 
 William Isaac Diggs, of Myrtle Beach, for
 Appellant.
 Emma Ruth Brittain, of Myrtle Beach, J.
 Matthew Dove, of Murrells Inlet, Jeffrey E. Johnson and Jarrod M. McPherson, of
 Conway, Robert Thomas King, of Florence, for Respondents.
 
 
 

PER CURIAM: This
 is an appeal in a delinquent tax sale matter from the grant of a directed
 verdict in favor of Horry County, Horry County Treasurer, Crystal Montgomery in
 her official capacity as Delinquent Tax Manager, (hereinafter collectively
 referred to as the County), South Carolina Department of Motor Vehicles (the
 DMV), Wiley B. Turner, and Scott Hollingsworth, d/b/a Hollingsworth Rentals,
 LLC, wherein the trial judge determined Donald R. Groce failed, as a matter of
 law, to present evidence entitling him to prevail on any of his claims arising
 from the sale of his mobile home at a delinquent tax sale.  Groce appeals
 asserting the trial court erred in (1) granting a directed verdict to Horry
 County in reliance on sections 12-51-40 and 31-17-320(A) of the South Carolina
 Code, where Groce properly complied with DMV mobile home application
 requirements for obtaining a certificate of title, (2) granting a directed
 verdict on the issue of damages in reliance on section 15-78-60(11) of the
 South Carolina Code when there was evidence of record the County failed to
 comply with the requirements of section 12-51-40(c), and (3) granting a
 directed verdict in Respondents' favor when the record shows the interest sold
 by the County was not that owned by the owner of record at the time of the
 sale.  We affirm.[1]
FACTUAL/PROCEDURAL BACKGROUND
This action arises from the
 sale of Groce's mobile home for delinquent taxes for tax year 2003, which were
 incurred prior to Groce's purchase of the mobile home from SouthTrust Bank.[2] 
 Groce sought to set aside the tax sale and resulting tax deed, asserting the
 Delinquent Tax Collector failed to comply with the mandatory statutory
 requirements of section 21-51-40 of the South Carolina Code.  Groce also
 asserted a cause of action for negligence against Horry County, the Horry
 County Treasurer, the Delinquent Tax Manager, and the DMV.
The matter came before a jury
 on September 15 and 16, 2008.  The record reveals Groce purchased the 1995
 General Mobile Home for $6,875.00 in April 2004.  Ronald Godbey was the
 previous owner of the mobile home.  On May 18, 2004, Groce applied with the DMV
 for a Certificate of Title and Registration for the mobile home.  Groce, who
 purchased the mobile home as a vacation home, included in the application to
 the DMV the physical address of the mobile home as the residence address, that
 being Shell Cove Mobile Home Park, 600 Highway 15 Lot 11, Myrtle Beach, SC
 29577.  However, Groce listed his home address of 4948 U.S. Highway 21,
 Hamptonville, NC 27020 as his mailing address on the DMV application.  The
 Certificate of Title was issued to Groce on June 7, 2004, and included only the
 address for the physical location of the mobile home in Myrtle Beach.[3] Groce testified that the County sold his mobile home for back taxes, but he
 never received a tax bill on the property, never saw a notice of levy on the
 property, never saw an advertisement for the sale of his property, and never
 received any notice of a right of redemption on the property.  It is undisputed
 that, although Groce registered for and received title to the mobile home from the
 state DMV office, Groce never registered the mobile home with Horry County.
Peggy Fouty, the manager of
 titles and registration at the DMV, stated that the physical location of the
 mobile home is the address required to be on the actual title issued for the
 mobile home.  Fouty further testified the title history of a mobile home
 registered with the DMV is available to those who qualify for the information. 
 According to Fouty, a title history submitted into evidence for this mobile
 home showed Ronald Godbey first owned the home, followed by Donald Groce, then
 Hollingsworth Rentals, and finally, Wiley Turner.  Additionally, the title history
 showed a mailing address for Donald Groce at 4948 U.S. Highway 21,
 Hamptonville, NC.[4] 
 While Fouty agreed the title history on this mobile home would be available to
 Horry County, as Horry County would qualify for the information, the County
 would have had to fill out an application to obtain the title history.  Fouty
 further testified, though Horry County may have access to the DMV's Phoenix
 system database, the information would be limited, and she could not state what
 access Horry County would have, as each county's technology is different.  
 Further, back in 2005, county access would have been even more limited to the
 DMV's mobile home records, as the information available to the counties had
 evolved over the years.
Crystal Montgomery, the
 Delinquent Tax Manager for the Horry County Treasurer's Office, testified to
 the procedure her office generally uses to collect delinquent taxes.  Montgomery
 stated the information kept in the Delinquent Tax Office's computer is input by
 the Assessor's Office.  She testified, while her office has access to the
 Phoenix database, which is the same database used by the DMV, access to the DMV's
 database is limited.  Further, any change in ownership is placed into the
 Delinquent Tax Office's database through the Assessor's Office. 
In regard to this particular
 mobile home, the Delinquent Tax Office sent the first notice through regular
 mail, addressed to Ronald Godbey.  The letter was sent to Ronald Godbey as the
 owner instead of Groce because the home was not registered with Horry County in
 Groce's name.  The taxes remained unpaid and the Delinquent Tax Office then
 sent a certified letter addressed to Ronald Godbey at an address in Cameron, North
 Carolina. The signature card was returned, dated May 6, 2004, with the
 signature of  "Candie Godbey."  At some point, notice of the 2003
 unpaid taxes on the mobile home was also sent to SouthTrust as the listed
 lienholder of a security interest in the mobile home.   
When the taxes continued to
 be unpaid, the Delinquent Tax Office posted a levy on the property on October
 8, 2004.  Montgomery testified Jonathan Hyman posted this particular levy on
 the property, which is printed in duplicate.  The levy notice indicated the
 taxes were due from 2003 and the property to be sold was that of Ronald
 Godbey.  The notice included the number 998-00-56-002, which identifies the
 actual mobile home, and the number 181 05 11 045, which indicates the parcel of
 land where the mobile home sits.  Handwritten on the notice, directly above the
 045 portion of the parcel number is "048*."  Below three lines of
 printed information at the bottom of the levy notice is "Wrong Map # Not
 at (045)," with a hand drawn arrow from this notation to the parcel
 number.  Below that was an additional handwritten notation of "No Sticker." 
 Montgomery testified the handwritten 048 could have meant Hyman went to parcel
 045, discovered the mobile home he was looking for was not in that place, went
 back to the office where he researched and discovered the mobile home was on
 parcel 048, and then went back to 048 and found the mobile home there.  This
 did not raise any concerns for Montgomery, as this was a common occurrence with
 mobile homes since mobile homes are often moved and map numbers are sometimes
 changed.  Montgomery also stated the "No Sticker" notation on the
 levy notice did not raise a concern either as she believed that when Hyman went
 to parcel 045, there was a home located on that parcel that did not have a
 sticker.  She noted the fact that Hyman brought the carbon copy of the levy
 notice back to the office, and not the whole levy sign, meant that he found the
 mobile home in question. 
After posting the levy, the
 Delinquent Tax Office advertised the sale of the property in the local
 newspaper on November 18, November 24, and December 2, 2004.  The
 advertisements included the mobile home number and parcel number included on
 the levy notice, and listed it as the property of Ronald Godbey.  When the
 taxes remained unpaid, the property went to tax sale on December 6, 2004, and
 was purchased by Hollingsworth Rentals.  A bill of sale for the mobile home was
 subsequently issued to Hollingsworth Rentals on December 27, 2005.
Montgomery testified, because
 her office was unaware Groce was the owner of the property prior to sale, no
 notice was sent to him prior to the tax sale.  During the one-year-redemption
 period, the Delinquent Tax Office would research phone books and records on
 their computers to see if there was any updated information.  A screen print
 from the DMV office pulled from the Phoenix system, which was used by the
 Delinquent Tax Office to research mobile homes, was submitted into evidence. 
 This printed document listed Groce as the owner of the mobile home in question,
 and included the physical address of the mobile home in Myrtle Beach and a
 handwritten notation of "New Owner?" at the bottom. It did not
 provide Groce's North Carolina address, but only the physical address of the
 mobile home in Myrtle Beach.  The document was dated May 11, 2005, five months
 after the tax sale of the mobile home.  Once the Delinquent Tax Office realized
 there was potentially a new owner of the mobile home, they sent a letter dated
 May 16, 2005 to Groce at the Myrtle Beach address, notifying him of the one-year-
 redemption period.  However, the letter was returned, marked "ATTEMPTED
 NOT KNOWN" by the postal service.  Montgomery testified when they have
 letters returned like that for a local address, her office would check to see
 if there was a phone number in the phone book or a vehicle registered to the
 individual.  A handwritten note in their file, made at some point during the
 redemption period, stated, "No vehicle address for Groce," indicating
 her office searched records to determine whether Groce had a vehicle registered
 in the county.
Montgomery acknowledged no
 notice of the delinquent taxes was sent to Groce prior to the tax sale, Groce
 was never named on the notice of levy or in the newspaper advertisements, and
 Groce never received notice of the tax sale.  However, she testified this lack
 of notice and failure to include his name was due to the fact that Groce never
 registered the mobile home with Horry County, and her office therefore had no
 record that he was the owner.  To register the mobile home with the county, all
 Groce needed to do was bring his title to the Assessor's Office, give them the
 information of his mailing address and where the home was located, and pay a
 $5.00 sticker fee for a sticker to be placed in the window of the mobile home. 
 She further explained that Ronald Godbey was sent the notices and was listed as
 the owner in the documents they prepared relative to this matter because the
 mobile home was registered in Godbey's name and not Groce's.  In regard to this
 particular mobile home, Montgomery testified her office took the following
 steps: (1) mailed the delinquent tax notice to Godbey, since he was the
 registered owner, (2) mailed a certified letter to Godbey as the registered
 owner, (3) levied on the property that was actually sold, (4) ran an
 advertisement of the sale in a local newspaper for three days in consecutive
 weeks prior to the tax sale, (5) sent notice of the delinquent taxes to
 SouthTrust as the lienholder of record, (6) conducted the tax sale on December
 6, 2004, and (7) researched for updated information and sent courtesy letters
 during the one-year-redemption period. 
Following Montgomery's
 testimony, Groce rested his case and the County then moved for a directed
 verdict as to the negligence claim arguing, pursuant to section 15-78-60(11) of
 the South Carolina Code, as a government entity, it was not liable for a loss
 resulting from assessment or collection of taxes or from enforcing the tax
 laws.  The trial court agreed, found the County was not liable for damages
 pursuant to that statute, and granted a directed verdict on that claim.  The
 trial court further noted the DMV, as well as Wiley and Hollingsworth, were no
 longer subject to Groce's negligence action, pursuant to a consent order.
The County then moved for a
 directed verdict on the claim to set aside the tax sale.  The County argued it
 had complied with the requirements of section 12-51-40 of the South Carolina
 Code, and though Groce asserted that his application with the DMV showing his
 mailing address put the County on notice of that address such that the sale was
 defective, Groce failed to present any evidence that the County had an
 obligation to procure from the DMV the application filed by Groce.  The County
 further maintained the owner of record of the property was Ronald Godbey, based
 upon the records with the County, and that was so because Groce failed to
 comply with section 31-17-320 of the South Carolina Code, which required him to
 register as the owner of the mobile home with the County.  Groce acknowledged
 his failure to comply with section 31-17-320, but argued that failure did not
 excuse the County from strict compliance with section 12-51-40.  Groce asserted
 the County was put on notice that the owner of the property changed and they
 had access to information showing that Groce was the true owner of the property
 by virtue of his registration through the DMV.  Groce also questioned the
 validity of the sale because the property was not sold in the name of the true
 owner.  The trial court agreed that even if Groce did not register the mobile
 home with the County, the County could not claim it was a valid tax sale if it
 did not comply with the statutory requirements of sending out notice and
 levying.  It found, however, that the County followed the requirements of
 section 12-51-40, and although Groce did not receive any type of notice prior
 to the sale, Groce failed to comply with section 31-17-320 and the County was
 not required to do anything further.  Thereafter, on October 21, 2008, the
 trial court filed a written order directing a verdict against Groce finding
 Groce failed, as a matter of law, to present evidence establishing he was
 entitled to prevail on any of his claims. The court determined Groce's claim of
 negligence against the County was barred by section 15-78-60(11).   As to the
 claim to set aside the tax sale, the trial court held the evidence presented
 established the County followed the provisions of section 12-51-40 in
 conducting the tax sale, and though Groce testified he did not receive notice
 of the tax sale, the evidence established the owner of record was provided
 notice at the best address available as required by statute.  The trial court
 further held Groce did not receive notice because he failed to license his
 mobile home in the county as required by section 31-17-320(A).  This appeal
 follows.
ISSUES
1. Whether the trial court erred in
 granting the County's motion for directed verdict in reliance on sections 12-51-40
 and 31-17-320(A) of the South Carolina Code when Groce properly complied with
 DMV mobile home application requirements for obtaining a certificate of title.
2. Whether the trial court erred in
 granting a directed verdict on the issue of damages in reliance on section
 15-78-60(11) of the South Carolina Code when there was evidence in the record
 the County failed to comply with the requirements of section 12-51-40(c) of the
 South Carolina Code.
3. Whether the trial court erred in
 directing a verdict for the County when the interest sold at the tax sale was
 the interest of the prior owner.
STANDARD OF REVIEW
When ruling on a motion for
 directed verdict, the trial court is required to view the evidence and the
 inferences that can be drawn therefrom in the light most favorable to the
 nonmoving party.   Hinkle v. Nat'l Cas. Ins. Co., 354 S.C. 92, 96, 579
 S.E.2d 616, 618 (2003).  When reviewing a trial court's grant or denial of a
 motion for directed verdict, the appellate court will reverse only when there
 is no evidence to support the ruling or when the ruling is governed by an error
 of law.  Austin v. Stokes-Craven Holding Corp., 387 S.C. 22, 42, 691
 S.E.2d 135, 145 (2010).   If the evidence as a whole is susceptible of more
 than one reasonable inference, a jury issue is created and the motion should be
 denied.  Pye v. Estate of Fox, 369 S.C. 555, 563, 633 S.E.2d 505, 509
 (2006).  Essentially, the appellate court must determine whether a verdict for
 the party opposing the motion would be reasonably possible under the facts as
 liberally construed in his or her favor.  Id. at 564, 633 S.E.2d at 509.
LAW/ANALYSIS
Section 12-51-40 provides in
 pertinent part as follows:

 After
 the county treasurer issues his execution against a defaulting taxpayer in his
 jurisdiction, . . . directed to the officer authorized to collect delinquent
 taxes, assessments, penalties, and costs, . . .  the officer to which the
 execution is directed shall:
 (a) On
 April first or as soon after that as practicable, mail a notice of delinquent
 property taxes, penalties, assessments, and costs to the defaulting taxpayer
 and to a grantee of record of the property, whose value generated all or part
 of the tax.  The notice must be mailed to the best address available,
 which is either the address shown on the deed conveying the property to him,
 the property address, or other corrected or forwarding address of which the
 officer authorized to collect delinquent taxes, penalties, and costs has actual
 knowledge. . . .
 (b) If
 the taxes remain unpaid after thirty days from the date of mailing of the
 delinquent notice, or as soon thereafter as practicable, take exclusive
 possession of the property necessary to satisfy the payment of the taxes,
 assessments, penalties, and costs.  In the case of real property,
 exclusive possession is taken by mailing a notice of delinquent property taxes,
 assessments, penalties, and costs to the defaulting taxpayer and any grantee
 of record of the property at the address shown on the tax receipt or to an
 address of which the officer has actual knowledge, by "certified mail,
 return receipt requested-restricted delivery". . . . In the case of personal
 property, exclusive possession is taken by mailing the notice of delinquent
 property taxes, assessments, penalties, and costs to the person at the
 address shown on the tax receipt or to an address of which the officer has
 actual knowledge.  . . . The return receipt of the "certified mail"
 notice is equivalent to "levying by distress".
 (c) If
 the "certified mail" notice has been returned, take exclusive
 physical possession of the property against which the taxes, assessments,
 penalties, and costs were assessed by posting a notice at one or more
 conspicuous places on the premises, . . .  the posting of the notice is
 equivalent to levying by distress, seizing, and taking exclusive possession of
 it, or by taking exclusive possession of personalty. . . .  Mobile homes are
 considered to be personal property for the purposes of this section unless the
 owner gives written notice to the auditor of the mobile home's annexation to
 the land on which it is situated.
 (d) The
 property must be advertised for sale at public auction.  The advertisement must
 be in a newspaper of general circulation within the county or municipality, if
 applicable, and must be entitled "Delinquent Tax Sale".  It must
 include the delinquent taxpayer's name and the description of the
 property, a reference to the county auditor's map-block-parcel number being
 sufficient for a description of realty.  The advertising must be published once
 a week before the legal sales date for three consecutive weeks for the sale of
 real property, and two consecutive weeks for the sale of personal property. . .
 .

S.C.
 Code Ann. § 12-51-40 (Supp. 2010) (emphasis added). 
Section 31-17-320 provides in
 part as follows:

 (A)
 Within fifteen days after . . . the purchase of a mobile home in this State . .
 . for dwelling purposes, the owner, rental agent, or person in possession shall
 obtain a license from the governing body of the county or its designated agent hereinafter
 referred to as licensing agent, in which such mobile home is located.
 (B)
 Before issuing a license for a mobile home to be located in any county in this
 State, the licensing agent shall require from the person applying for the
 license either a copy of the certificate of title to the mobile home, or a copy
 of the completed application for a certificate of title submitted to the
 Department of Motor Vehicles.  Upon satisfaction of all county licensing
 requirements, including payment of any licensing fee, the county licensing
 agent shall give the license applicant a certified copy of the application
 form, indicating that the licensing requirements have been met.

S.C.
 Code Ann. § 31-17-320 (2007) (emphasis added).
Section 15-78-60(11) of the
 South Carolina Code provides that a "governmental entity is not liable for
 a loss resulting from: . . . assessment or collection of taxes or special
 assessments or enforcement of tax laws."  S.C. Code Ann. § 15-78-60(11)
 (2005).
I. Compliance with section
 12-51-40 and effect of section 31-17-320(A)
Groce contends the trial
 court erred in granting the County's directed verdict motion on his action to
 set aside the tax sale and deed.  He asserts the County failed to use the "best
 evidence"[5] available to notify him, as the grantee of record, of the lien and impending
 sale because his North Carolina mailing address was on file with the DMV and
 was accessible by the County through the DMV.  Additionally, Groce argues there
 is a factual dispute as to whether the County complied with section 12-51-40 in
 meeting the levy requirements under the statute.  He notes there was a
 discrepancy as to the location of the mobile home by the "048*"
 indication on the notice of levy, thereby raising an inference the levy was posted
 on the wrong mobile home, and also maintains there is a factual dispute as to
 whether the property was properly levied, as Montgomery acknowledged she did
 not post on the property herself and therefore could not say the levy was
 posted on it.     Finally, Groce maintains the trial court's reliance on section
 31-17-320 is misplaced because, though this statute regulates certain aspects
 of mobile home ownership, it is not a part of the alternate procedure for
 collection of delinquent taxes.  Groce contends this section shows that records
 at the DMV "are married to the idea of ownership of mobile homes,"
 thus providing the "best evidence" regarding notice to the owner, and
 the County's failure to take reasonable steps available to it to provide the
 property owner with notice did not satisfy due process requirements.
Our appellate courts have
 consistently held that delinquent tax sales must be conducted in strict
 compliance with statutory requirements.  Hawkins v. Bruno Yacht Sales, Inc.,
 353 S.C. 31, 36, 577 S.E.2d 202, 205 (2003);  Rives v. Bulsa, 325 S.C.
 287, 292, 478 S.E.2d 878, 880 (Ct. App. 1996).  Failure to give notice of a tax
 sale pursuant to these requirements is a fundamental defect in the tax
 proceedings that renders the proceedings absolutely void.  Hawkins, 353
 S.C. at 36, 577 S.E.2d at 205.  Thus, regardless of whether Groce properly
 registered the mobile home with the County, if the County failed to strictly
 comply with the statutory requirements of the sale, the tax sale would be void.
A.  Mailing of notices         
Section 12-51-40(a) directs
 the officer authorized to collect delinquent taxes to mail a notice of
 delinquent property taxes, penalties, assessments, and costs "to the
 defaulting taxpayer and to a grantee of record," and provides the notice
 is to be mailed to "the best address available, which is either the
 address shown on the deed conveying the property to him, the property address,
 or other corrected or forwarding address of which the officer authorized to
 collect delinquent taxes, penalties, and costs has actual knowledge." 
 Accordingly, the County was required to mail notice of the delinquent taxes to
 Ronald Godbey as the defaulting taxpayer.  The undisputed evidence shows Ronald
 Godbey was sent the notices and was listed as the owner in the documents the
 County prepared relative to this matter because the mobile home was registered
 in Godbey's name.  The property was not registered in Groce's name due to the
 fact Groce failed to register the mobile home as required by section
 31-17-320.  Accordingly, Groce was not a "grantee of record."  
As to the requirement that
 the notices be sent to "the best address available," Groce does not
 dispute that the notices were sent to the proper address for Godbey.  Rather,
 he contends the County was required to notify him at his North Carolina mailing
 address, which was on file with the DMV and was accessible by the County
 through the DMV.  As previously noted, the undisputed evidence is that the
 County did not have an address on file for Groce prior to the tax sale because
 Groce failed to register the mobile home with the County as required by section
 31-17-320.  While there is evidence that the County had limited access to the
 DMV's Phoenix system database, the testimony shows this information would be
 limited, it was unknown what access Horry County in particular would have had
 to the system as each county's technology is different, and back in 2005 county
 access would have been even more limited to the DMV's mobile home records, as
 the information available to the counties had evolved over the years.  Thus,
 there is no evidence the County had access to Groce's North Carolina mailing
 address through the DMV's Phoenix database.  Indeed, the screen print from the
 DMV office pulled from the Phoenix system, which was used by the Delinquent Tax
 Office to research this mobile home and was printed some five months after the
 tax sale, included only the physical address of the mobile home in Myrtle Beach
 and did not provide Groce's North Carolina address.  Accordingly, there is no
 evidence the County failed to use the "best address available" to it.
Though Groce essentially
 maintains that the County had a duty to fill out an application to perform a
 title search on the mobile home with the DMV, which is a State agency, we find such
 measures are not necessary for statutory compliance.  Ostensibly, the County
 could employ an investigator to track potential owners of mobile homes when
 owners of record are notified and taxes remain unpaid; however, we do not
 believe the legislature intended to create such an undue burden on the counties
 in order to comply with the statute.  Clearly, had Groce complied with the
 statutory mandate of section 31-17-320 that he license the mobile home with the
 County within fifteen days of purchase, the County would have known Groce was a
 grantee of record and would have been required to provide notice to him at the
 best address available.  Because Groce failed to comply with the requirement of
 county registration, the County was unaware prior to the tax sale that
 ownership had changed in the mobile home, and Godbey was still the owner of
 record in the County's files.  Accordingly, the County properly sent the
 required notices under section 12-51-40 to Godbey at the best address available
 for him.[6]  
 We decline to find registration of the mobile home with the state's DMV office
 was sufficient to put the County on notice of Groce's ownership of the mobile
 home and Groce's preferred mailing address.  Further, there is no evidence the
 County had actual knowledge of Groce's mailing address.  Accordingly, we find
 the only evidence of record shows the County complied with the requirements of
 section 12-51-40(a) in mailing the necessary notices.
B.  Levy requirements
Groce contends the trial court
 erred in directing a verdict for the County as there is a factual dispute as to
 whether the County complied with the levy portion of the statute in physically
 posting the property.  Subsection (b) of section 12-51-40 of the South Carolina
 Code provides, in the case of personal property, exclusive possession is taken
 by mailing the notice "to the person at the address shown on the tax
 receipt or to an address of which the officer has actual knowledge."  S.C.
 Code Ann. § 12-51-40(b) (Supp. 2010).  Here, the County mailed notice by
 certified mail to Ronald Godbey, the defaulting taxpayer and only person shown
 as owner of record with the county, and the return receipt was signed by Candie
 Godbey, indicating receipt of the notice.  Unlike real property, personal
 property does not require that this notice be mailed certified with delivery
 restricted to the addressee.  See Hawkins, 353 S.C. at 39, 577
 S.E.2d at 206 (holding, though the legislature intended certified mail
 requirements apply to both real and personal property under subsection (b) of section
 12-51-40, the legislature did not intend to require notices on personal
 property be mailed restricted delivery).  Accordingly, the County successfully
 levied by distress on the property by sending the notice certified mail to Ronald
 Godbey, receipt of which was acknowledged by Candie Godbey, and it was not
 necessary for the County to thereafter levy by posting on the property inasmuch
 as the "return receipt of the 'certified mail' notice" was "equivalent
 to 'levying by distress'" under section 12-51-40(b).  Thus, even if there
 were any questions of fact as to the sufficiency of the County's posting of the
 levy notice on the property itself, that posting was not necessary.[7]
We find, as a matter of law,
 the County complied with the requirements of section 12-51-40 and satisfied due
 process requirements by complying with the statute and taking additional steps
 in an attempt to locate Groce after the tax sale when the County discovered the
 possibility that Groce had purchased the mobile home in question.  Accordingly,
 a verdict for Groce would not be reasonably possible under the facts as
 liberally construed in his favor and the trial court properly granted the
 County's motion for directed verdict.
C.  Section 31-17-320
Groce argues the trial court's
 reliance on section 31-17-320 is misplaced because this statute is not a part
 of the alternate procedure for collection of delinquent taxes.  He further
 argues that section 31-17-320(B) allows for issuance of a license upon receipt
 of either a copy of the certificate of title or a copy of the completed
 application for a certificate of title, thereby indicating the records at the
 DMV are married to the idea of ownership of mobile homes.  These arguments were
 neither raised to nor ruled upon by the trial court and therefore are not
 preserved for review.  See Aiken v. World Fin. Corp. of S.C., 373
 S.C. 144, 148, 644 S.E.2d 705, 708 (2007) (stating, in order for an issue to be
 preserved for appellate review, it must have been raised to and ruled upon by
 the trial judge); Murphy v. Jefferson Pilot Commc'ns Co., 364 S.C. 453,
 465, 613 S.E.2d 808, 814 (Ct. App. 2005) (indicating arguments raised for the
 first time on appeal are not preserved for our review).
II. Directed verdict on the negligence
 cause of action
Groce next contends the trial
 court erred in granting a directed verdict on the issue of damages in reliance
 on section 15-78-60(11) of the South Carolina Tort Claims Act.  Groce relies on
 the case of Tanner v. Florence County Treasurer, 336 S.C. 552, 521
 S.E.2d 153 (1999), for the proposition that damages may lie where one's
 property has been sold at a tax sale following a county's failure to follow the
 statutorily required procedure set forth in section 12-51-40.  Groce contends,
 because there is evidence of negligence in that the County failed to review the
 DMV records to determine the owner of record prior to the tax sale and failed
 to otherwise comply with the requirements of section 12-51-40, the trial court
 erred in relying on section 15-78-60(11) in granting summary judgment to the
 County on the issue of damages.
This issue is not preserved
 for appellate review.  The County moved for a directed verdict on the
 negligence claim arguing it was not liable for loss resulting from the
 assessment or collection of taxes or enforcement of the tax laws pursuant to
 section 15-78-60(11), and the actions complained of by Groce were those taken
 during the collection of delinquent taxes and the enforcement of the tax laws. 
 In response, counsel for Groce stated it was her understanding the burden was
 on the government to show that it fell into an exception to the waiver of
 immunity under the act.  Counsel then asked for "a couple of minutes to
 put [her] hands on [her] notes."  The trial court agreed to give her some
 time.  Counsel thereafter apologized, stating, "I had it on a pad and we've
 had so many pads over here."  She then informed the court that she did not
 wish to cause any further delay.  Thereupon, the trial court stated there was
 nothing to indicate the mobile home was sold for any other reason than
 delinquent taxes and granted a directed verdict on the issue, finding the
 County could not be held liable for damages pursuant to section 15-78-60(11). 
 Counsel for Groce did not object to this ruling, nor did counsel  argue to the
 court, as Groce does on appeal, that the County could still be liable for
 damages in spite of section 15-78-60(11) if the County failed to comply with
 the statutory requirements of section 12-51-40.  Rather, counsel directed the
 court's attention to the fact that the directed verdict regarding damages did
 not settle the issue of the validity of the tax sale under Groce's declaratory
 judgment action to set aside the tax sale.  Because Groce did not make any
 argument against the directed verdict on the negligence action, and clearly did
 not make the specific argument to the trial court he now raises on appeal, this
 issue is not preserved.  See S.C. Dep't of Transp. v. First Carolina
 Corp. of S.C., 372 S.C. 295, 301-02, 641 S.E.2d 903, 907 (2007) (holding,
 to be preserved for appellate review, an issue must have been:  (1) raised to
 and ruled upon by the trial court, (2) raised by the appellant, (3) raised in a
 timely manner, and (4) raised to the trial court with sufficient specificity).  See also  I'On, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406,
 422, 526 S.E.2d 716, 724 (2000) (stating imposing preservation requirements on
 the appellant is meant to enable the lower court to rule properly after it has
 considered all relevant facts, law, and arguments, and noting that the purpose
 of an appeal is to determine whether the trial court erroneously acted or
 failed to act, and when appellant's contentions are not presented or passed upon
 by the trial court, such contentions will not be considered on appeal).
III. Interest sold
Lastly,
 Groce contends the trial court erred in granting a directed verdict to the
 County based upon the interest sold.  He argues the record shows the interest
 sold by the County was not that of the record owner, Groce, but that of the
 previous owner, Godbey, and the County publicly advertised the sale of property
 owned by Godbey and the Bill of Sale from the tax sale shows the interest
 purchased was that of the defaulting taxpayer, Godbey.  He therefore maintains
 his interests were not sold at the tax sale.  In making this argument, Groce
 cites the case of F.C. Enterprises, Inc. v. Dibble, 335 S.C. 260, 516
 S.E.2d 459 (Ct. App. 1999), for the proposition that one purchases at a tax
 sale the property interest of the person referenced in the newspaper
 publication and whose name is listed on the Bill of Sale as the defaulting
 taxpayer, because "as a matter of law, a purchaser at a tax sale acquires
 only that interest held by the owner of the property at the time of the tax
 sale."  Id. at 266, 516 S.E.2d at 462.  He further cites the case
 of Harrington v. Blackstone, 311 S.C. 459, 429 S.E.2d 826 (Ct. App.
 1993), for the proposition that a purchaser at a judicial sale secures the same
 title and rights in the property as the person whose interest was sold, or of
 the persons bound by the decree of sale.  Id. at 465, 429 S.E.2d at 830. 
 We find no merit to this argument.  
Both Dibble and Harrington are clearly distinguishable, and do not support
 the argument asserted by Groce.  In Dibble, this court found that a
 purchaser at a tax sale of property that was subject to a lease and an option,
 entered into before the taxes became delinquent on the property, purchased the
 property subject to the lease and option, acquiring only that interest held by
 the owner of the property at the time of the tax sale.  335 S.C. at 266, 516
 S.E.2d at 462.  In Harrington, the master foreclosed a bank's mortgage
 and ordered the property sold at public sale subject to the provisions of the
 master deed as to the property submitted to the homeowners' property regime. 
 311 S.C. at 461, 429 S.E.2d at 828.  The purchaser at the foreclosure sale,
 Blackston, argued none of the property purchased at the foreclosure sale was
 restricted by the master deed.  Id. at 464, 429 S.E.2d at 829.  This
 court held, by purchasing the property, Blackston became a party to the
 proceedings and was bound by the order of foreclosure.   Id. at 465, 429
 S.E.2d at 830.  In so holding, the court noted, "a purchaser at a judicial
 sale secures the same title and rights in the property as the person whose
 interest was sold, or of the persons bound by the decree of sale."  Id.  
Here, the lien attached to
 the property on December 31, 2002, and the taxes became delinquent when they
 remained unpaid after January 15, 2004.  S.C. Code Ann. §§ 12-49-10 & -20
 (2000); S.C. Code Ann. § 12-45-70(A) (Supp. 2010); Dibble, 335 S.C. at
 263-64, 516 S.E.2d at 461.  Thus, the delinquent taxpayer was Godbey.  Section
 12-51-40(d) specifically provides the advertisement of the property must
 include "the delinquent taxpayer's name," but does not require
 inclusion of a subsequent purchaser who fails to register his property with the
 county.  Further, section 12-51-130 of the South Carolina Code (Supp. 2010) provides,
 when the property is not redeemed within the time period allowed, a tax title
 is to be issued which must include the name of the defaulting taxpayer and the
 name of any grantee of record of the property.  Accordingly, the advertisement
 and the Bill of Sale both properly included Godbey as the defaulting taxpayer. 
 As previously noted, Groce was not a grantee of record, and therefore it was
 not necessary to list him as a grantee of record in the Bill of Sale.  Further,
 because Groce's purchase of the property was subsequent to the taxes becoming
 delinquent, Groce's interest in the property was subject to the tax lien.  In
 short, we do not believe Dibble and Harrington, which provide the
 purchaser at a judicial or tax sale takes the property subject to pre-existing
 encumbrances and liens on the property, have any bearing on whether an unknown
 purchaser of property, who purchased the property subsequent to taxes becoming
 delinquent on the property, must be named in the advertisements and Bill of
 Sale in order for the tax sale to be valid.  Indeed, to accept such an
 interpretation would allow one to avoid paying delinquent taxes on property
 subject to a tax lien by purchasing the property but concealing his ownership
 of the property and thereafter challenging any delinquent tax sale on the basis
 that he was not named in the tax sale.
CONCLUSION
We are not unsympathetic to
 Groce, as it does not appear he deliberately concealed his ownership in the
 property but, rather, applied for title with the DMV and, being from North
 Carolina, was simply unaware of the registration requirement with the County. 
 However, Groce's ignorance of the law is of no avail to him.  "Ignorantia
 juris quod quisque tenetur scire, neminem excusat"  denotes "Ignorance
 of the [or a] law, which everyone is bound to know, excuses no man."  Black's
 Law Dictionary 747 (6th ed. 1990).  Accordingly, we (1) affirm the trial court's
 directed verdict on the action to set aside the tax sale and deed on the basis
 of sections 12-51-40 and 31-17-320(A), finding the County complied with the
 statutory requirements of section 12-51-40 and Groce was not a grantee of
 record because he failed to register his mobile home as required by section
 31-17-320(A); (2) affirm the trial court's directed verdict as to Groce's
 negligence cause of action finding the issue unpreserved as Groce failed to
 argue against the motion at the trial level, and specifically failed to argue
 to the trial court that which he argues on appeal; and (3) find no merit to
 Groce's assertion that the tax sale was invalid because it was advertised in
 Godbey's name and the Bill of Sale was issued in Godbey's name.
AFFIRMED.
HUFF, KONDUROS, and LOCKEMY,
 JJ., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[2] Although Groce testified the mobile home was
 purchased by him at a bankruptcy sale, there is evidence SouthTrust actually
 sold it to Groce following the bank's repossession of the mobile home.
[3] Groce also testified that after going to the DMV, he
 stopped by "this tax place" where he met a woman named "Annemarie"
 and inquired about outstanding taxes on the property, but Annemarie "had
 no record of it."  However, Groce could not remember if he provided the
 physical address of the mobile home in South Carolina, and could not remember
 what information he provided to Annemarie in order to determine whether any
 taxes were owed.  Before Groce left, Annemarie gave him a piece of paper with
 her name and a phone number.  The paper was a handwritten note with "Assessors
 office" written across the top, followed by an address and telephone
 number and the name "Annemarie," with "get address" written
 on the bottom.
[4] It should be noted, however, that this title history
 was dated 9/10/2008, well after the tax sale.  
[5] It is likely Groce is really referring to
 "best address" rather than "best evidence," as the statute
 in question requires notice be mailed to the "best address available."
[6] Though the County was on notice that Groce was a
 potential new owner of the mobile home pursuant to the screen print from the
 DMV database, this screen print did not occur until five months after the
 property was sold at the tax sale, well after the County had already complied
 with the requirements of section 12-51-40.  Further, the evidence shows the
 County did make an effort during the redemption period to send notice to Groce
 that the tax sale had occurred by sending a letter to Groce at the address
 noted on the printout, and subsequently followed up by searching for another
 address for him when that letter was returned to the County.  
[7] See Rule 220(c), SCACR ("The appellate
 court may affirm any ruling, order, decision or judgment upon any ground(s) appearing
 in the Record on Appeal.").